UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADEMILSON J. SMITH, | ) | Case No. 4:17-CV-1034 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| CHAE HARRIS, Warden,[1] | ) | |
| Lebanon Correctional Institution, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |

On March 20, 2017, Ademilson Smith ("Petitioner"), pro se, executed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was filed with the Court on May 17, 2017. ECF Dkt. #1. Petitioner is currently incarcerated at the Lebanon Correctional Institution ("LCI"), and he is challenging his convictions and sentences rendered in his Trumbull County Common Pleas Court case. *Id.* Petitioner seeks relief for alleged constitutional violations that occurred during his trial in the Trumbull County Common Pleas Court, where he was convicted of one count of Burglary and two counts of Receiving Stolen Property. *Id.*; ECF Dkt. #9-1 at 15. On August 4, 2017, the Warden of the Lebanon Correctional Institution ("Respondent") filed a return of writ. ECF Dkt. #9. On September 11, 2017, Petitioner filed a traverse, which was broken down into several attachments. ECF Dkt. #s 10, 10-1, 10-2, 10-3, 10-4, 10-5, 10-6, 10-7, 10-8. For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice.

---

[1] Tom Schweitzer was named as the original Respondent in the instant petition, but is no longer Warden of the Lebanon Correctional Institution. Chae Harris is the current Warden of the Lebanon Correctional Institution as of the date of this Report and Recommendation.

1

## I.    FACTUAL HISTORY

The Ohio Eleventh District Court of Appeals set forth the facts of this case on direct appeal. ECF Dkt. #9-1 at 194-95. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013). "This presumption of correctness applies even to factual findings made by a state court of appeals based on the state trial record." *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). As set forth by the Eleventh District Court of Appeals, the facts are:

> {¶3} Patrolman Edwards, with the Warren City Police Department ("WCPD"), indicated that from midnight to 4:00 a.m. on September 25, 2011, he was working a side security job with a fellow officer, Brian Cononico, at the Hampshire House Apartments located on Fifth Street [fn. 1 Patrolman Edwards explained that a "side job" is extra employment in which a business requires police protection or assistance to help fight local crime. He stated that they were working in almost a security capacity but technically on duty as a Warren police officer.]. The officers were in uniform and sitting in a marked cruiser. While parked, they received information of a home burglary on Atlantic Street. In addition to items stolen from inside the residence, a purple Toyota RAV4 was stolen from the driveway. A description of the stolen vehicle, including the license plate number, was part of the dispatch.
>
> {¶4} Within two to five minutes of receiving the dispatch, a vehicle matching the description passed in front of the officers and pulled into a parking space at the apartment complex. At that point, Patrolman Edwards positioned the cruiser behind the purple RAV4. The officers approached the driver, identified as appellant. Patrolman Edwards recognized appellant from prior arrests. The officers observed a flat screen television inside the vehicle. Patrolman Edwards confirmed that the purple RAV4 driven by appellant was the purple RAV4 stolen from the Atlantic Street residence.
>
> {¶5} In the course of a search incident to arrest, Patrolman Edwards discovered on appellant's person a wallet belonging to the victim, Timothy Sekela, the occupant of the burglarized residence and the owner of the purple RAV4. The wallet contained Sekela's identification card and three credit cards.

{¶6} Sekela testified that he was awakened before 4:00 a.m. on September 25, 2011, when he heard his car starting in his driveway. When he looked out the window, he noticed his car was gone. Sekela went downstairs and noticed his television was missing in addition to his wallet. He called 9-1-1 and reported this information.

{¶7} As to the timeline of the 9-1-1 dispatch and arrest, Patrolman Edwards testified again that the arrest occurred between two and five minutes after he and Officer Cononico had received the dispatch.

{¶8} Officer Brian Holmes, with the WCPD, testified that he was working the midnight shift on the night at issue. He was sent to Sekela's residence after the burglary was reported. Officer Holmes and Sekela walked through the house and discovered that a sliding glass door at the rear of the residence was unlocked. Outside were footprints in the wet grass. Officer Holmes surmised that the sliding glass door was the burglar's point of entry.

ECF Dkt. #9-1 at 194-95.

## II. PROCEDURAL HISTORY

### A. State Trial Court

On November 16, 2011, a Trumbull County, Ohio Grand Jury indicted Petitioner on one count of Burglary under § 2911.21(A)(1) of the Ohio Revised Code ("ORC") and two counts of Receiving Stolen Property in violation of ORC § 2913.51. ECF Dkt. #9-1 at 5-7. The offenses were prosecuted in the Trumbull County Common Pleas Court under Case Number 11-CR-618, *State of Ohio v. Ademilson Smith*, and Petitioner had legal representation throughout the trial court proceedings. *Id.* at 8-10. Petitioner pleaded not guilty and filed several pretrial and speedy trial waivers. *Id.* at 42. On November 13, 2012, Petitioner filed a motion to suppress his statements and other evidence gained during a search and seizure. *Id.* at 11-13. After a suppression hearing, the trial court decided to suppress the statements Petitioner made during his arrest because he was not given proper warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966), but the court held that the

remaining evidence was admissible. *Id.* at 14; ECF Dkt. #9-2 at 1-54.

The case proceeded to jury trial, and after the State rested its case, counsel for Petitioner moved for judgment of acquittal on Count 1, the Burglary charge, and Count 3, the Receiving Stolen Property charge, pursuant to Ohio Criminal Rule 29. ECF Dkt. #9-2 at 136-37. The trial court denied the motion for acquittal. *Id.* at 139. Ultimately, the jury unanimously found Petitioner guilty of all three counts of the indictment. *Id.* at 204-07; ECF Dkt. #9-1 at 15. Petitioner subsequently filed a motion for acquittal or a new trial, which the trial court denied. ECF Dkt. #9-1 at 16-24.

Petitioner also requested a merger pursuant to Ohio Criminal Rule 32 of Counts 1-3 for sentencing purposes. ECF Dkt. #9-1 at 25. After a sentencing hearing, the trial court ordered Counts 2 and 3 to be merged and imposed an aggregate sentence of nine and a half years imprisonment. ECF Dkt. #9-1 at 29-31; ECF Dkt. #9-2 at 212-32. The trial court also notified Petitioner of post-release control. ECF Dkt. #9-1 at 32. Petitioner subsequently moved for the appointment of counsel for his direct appeal to the Eleventh District Court of Appeals, which the trial court granted. *Id.* at 33-35.

## B.    Direct Appeal

On June 14, 2013, Petitioner, through counsel, executed a notice of appeal in the Court of Appeals for Trumbull County, Eleventh Appellate District, which was filed on July 1, 2013. ECF Dkt. #9-1 at 36-37. Petitioner's Notice of Appeal included the following: (1) denial of the motion to suppress evidence; (2) denial of Ohio Crim. R.29 motions during trial; (3) all overruled evidentiary objections by defense counsel during trial; (4) guilty verdicts by the jury; (5) denial of the motion to set aside verdict and/or for new trial; (6) denial of merger amongst all Counts in the Indictment; and (7) sentences imposed by the trial court. *Id.* at 36. Pursuant to *Anders v. California*, 386 U.S. 738 (1967), Petitioner's attorney filed a motion to withdraw and a brief that identified one assignment

4

of error as follows: "Whether the trial court committed prejudicial error by overruling the Defendant's trial motion to have the evidence relating to the arrest suppressed for lack of reasonable and articulable suspicion?" *Id.* at 38-55. The brief also contained two issues for review and argument as follows:

1.     Whether the trial court was correct in finding that the time-stamped notations on the 911 dispatcher's log were not conclusively accurate?

2.     Whether the trial court was correct in finding that the dispatcher's testimony and the arresting officer's testimony properly explained the discrepancy between the inconsistent time-stamp notations on the dispatchers' log?

*Id.* As such, Petitioner's original appellate attorney did not raise a federal constitutional claim pertaining to Petitioner's perjury allegation in his *Anders* brief and neither did Petitioner in his first pro se appellate merits brief, which copied the *Anders* brief. ECF Dkt. #9-1 at 38-55.

On October 31, 2013, the appellate judge granted Petitioner leave to raise any additional arguments in support of his appeal within 30 days and held counsel's motion to withdraw in abeyance pending further review and determination pursuant to *Anders. Id.* at 56-57. Subsequently, Petitioner, pro se, filed a second merits brief that supplemented his attorney's *Anders* brief but which presented no new claims or allegations of error. *Id.* at 56-77. The State filed a reply brief, and Petitioner filed a reply, which was filed on December 4, 2013. *Id.* at 80-100. Petitioner's first reply contained additional assignments of error, as follows:

1.     During the suppression hearing, the court allowed the evidence to be used at trial when the Defendant was unlawfully stopped.

2.     Dispatcher Sandy Placanica-Frazenskos ("Placanica") committed perjury during trial.

3.     The police officers violate[d] the Defendant's 4th Amendment [rights] by placing him in custody before a dispatch call without probable cause.

4.     The prosecuting attorney Michael Burnett violate[d] the Defendant's 14th Amendment [rights] by admitting error in trial and concluding that it does not

5

matter that there was error.

5.    [Petitioner] was deprived of Due Process of the law when the trial court abused its discretion by allowing dispatcher Placanica to commit perjury during trial while the prosecutor acknowledge[d] the error.

*Id.* at 93-100. Petitioner raised his perjury allegations, for the first time, in his first appellate reply brief. *Id.* at 93-100. The appellate court acknowledged that Petitioner's reply brief included additional possible errors, but after further review, it found at least one issue of arguable merit regarding whether Petitioner was properly sentenced, an issue not raised in his current habeas corpus petition. *Id.* at 104-05. The court also appointed new appellate counsel for Petitioner. *Id.* at 105. The court instructed Petitioner's new appellate counsel to brief the arguable sentencing issue. *Id.* Accordingly, Petitioner's counsel prepared a new merits brief with the sole assignment of error based on the sentencing issue, which was reiterated in the second reply brief. *Id.* at 107-23, 181-91. In its March 23, 2015 decision on the merits, the Court of Appeals addressed the sole assignment of error and found it was without merit. *Id.* at 193-200. Petitioner's appellate attorney subsequently filed a motion to withdraw as counsel, which the state appellate court granted. *Id.* at 206-08.

### C.    Ohio Supreme Court

On April 30, 2015, Petitioner, pro se, executed a notice of appeal and accompanying memorandum in support to the Ohio Supreme Court, both of which were received and filed on May 6, 2015. ECF Dkt. #9-1 at 209-21. In his memorandum in support, Petitioner presented the same five propositions of law that were contained in his reply brief at the appellate level. *Id.* at 93-100, 216. In addition, Petitioner also stated: "As claim of 'Ineffective assistance of appellate counsel' for failing to raise issues that were not raised in my original appeal, the defendant shows that a 'genuine issue' exists that he was deprived of effective assistance of appellate counsel. . . Neither attorney did

as asked of defendant[sic]." *Id*. at 216 (citing *State v. Spivey*, 701 N.E.2d 696 (Ohio 1998)). The State filed a response. *Id*. at 236-48. On July 22, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). *Id*. at 249.

**D**.     **Post-Conviction Relief**

On November 7, 2013, while his direct appeal was pending, Petitioner filed a pro se petition to vacate or set aside the judgment of conviction or sentence in the trial court, raising the following claims:

1.     Violation of rights to due process, fair trial, equal protection, effective assistance of counsel, and cruel and unusual punishment. Defendant was in custody without probable cause.

2.     The Fourth Amendment. Police officer Cononico arrested the defendant without probable cause.

ECF Dkt. #9-1 at 250-53. Petitioner also filed a motion for expert assistance and a motion for appointment of counsel on November 7, 2013. *Id*. at 264-69. On November 20, 2013, the trial court denied Petitioner's motion for expert assistance. *Id*. at 270. On December 5, 2013, the State filed a motion to dismiss Petitioner's motion to vacate or set aside judgment of conviction or sentence. *Id*. at 254-60. The trial court subsequently denied Petitioner's motion to vacate or set aside judgment of conviction or sentence. *Id*. at 271. Petitioner did not appeal this decision.

**E**.     **Ohio App.R. 26(B) Application to Reopen Direct Appeal**

On May 15, 2015, Petitioner filed a pro se Ohio App.R. 26(B) application to reopen his direct appeal based on an allegation of ineffective assistance of appellate counsel. ECF Dkt. #9-1 at 272-82. Petitioner alleged that his appellate counsel was ineffective for failing to raise the same five assignments of error he raised in his reply brief at the appellate level, which were:

1.     During the suppression hearing, the court allowed the evidence to be used at

7

trial when the Defendant was unlawfully stopped. The Fourth Amendment to the United States Constitution and the Ohio Constitution Article I, Section 14, prohibit[s] unreasonable searches and seizures.

2.    Dispatcher Sandy Placanica-Frazenskos ("Placanica") committed perjury during trial.

3.    The police officers violate[d] the defendant's 4th [Amendment rights] by placing him in custody before a dispatch call, without probable cause. (Exhibit 2).

4.    The prosecutor Michael Burnett violate[d] the defendant['s] 14th [Amendment rights] by admitting error in trial and concluding that it does not matter that there was error.

5.    Ademilson J. Smith [Petitioner] was deprived of Due Process of the law when the trial court abused [its] discretion by allowing dispatcher Placanica to commit perjury during trial while the prosecuting attorney acknowledge[d] the error.

ECF Dkt. #9-1 at 95, 272-82. The State filed a memorandum in opposition to Petitioner's application to reopen. *Id.* at 283-91. On December 2, 2015, the state appellate court denied Petitioner's application to reopen his appeal after finding no "genuine issues as to whether [Petitioner] was denied the effective assistance of appellate counsel" and determining that Petitioner's "alleged errors lack merit, and [he] was not prejudiced as a result of his counsel's failure to raise them." *Id.* at 292-95.

On December 30, 2015, Petitioner filed a pro se notice of appeal and accompanying memorandum in the Ohio Supreme Court, both of which were filed on January 8, 2016. ECF Dkt. #9-1 at 296-315. On this collateral appeal, Petitioner raised the same five assignments of error that he raised in his application to reopen. *Id.* at 306-10. In response, the State filed a memorandum in opposition to jurisdiction. *Id.* at 321-30. On March 23, 2016, the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). *Id.* at 339.

**III.    <u>FEDERAL HABEAS CORPUS PETITION</u>**

Petitioner, pro se, executed the instant petition for a writ of federal habeas corpus on March 20, 2017, which was filed on May 17, 2017. ECF Dkt. #1. Petitioner raised the following grounds for relief:

1.    GROUND ONE: Dispatcher Sandy Placanica-Frazenskos (Placanica) committed perjury during trial. The radio input was not done by Placanica, it was done by Maggie R. Raschilla who was not in trial (Exibit[sic] 2, p.2). Thus, Placanica committed perjury in trial.

2.    GROUND TWO: The police officers violates[sic] the defendants[sic] 4th amendment[sic] by placing him in costody[sic] before a dispatch call, without probable cause (Exibit[sic] 2). The record shows that they were in communication before and after the dispatch call with Maggie R. Raschilla, not Sandy A. Placanica. (Exibit[sic] 2-p.2).

3.    GROUND THREE: Prosecutor Michael Burnett violates [sic] the defendants[sic] 14th amendment[sic] by admitting error in trial. He said "if you look at that input was put in by Raschilla. (Not Placanica who lied and said it was herself.)...to be honest with you, it's not the best of evidence anyway." (Tp. 127-128). He concluded that it does not matter that there was error.

4.    GROUND FOUR: Ademilson J. Smith was deprived of Due process of the law when the trial court abused it's[sic] discretion by allowing dispatcher Placanica to commit perjury during trial while the prosecuting attorney acknowledges[sic] the error.

*Id.* at 5-9. On August 4, 2017, Respondent filed an answer/return of writ. ECF Dkt. #9. On September 11, 2017, Petitioner filed a Traverse. ECF Dkt. #s 10, 10-1, 10-2, 10-3, 10-4, 10-6.

## IV.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. Justice O'Connor noted in *Daniels v. United States*: "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001) (citing *United States v. Olano*, 507 U.S. 725, 731 (1993)).

**A.**     **Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. § 2244(d)(1). The AEDPA statute of limitations is not at issue in this case.

**B.**     **Exhaustion of State Remedies**

Subject to the statute of limitations, federal habeas corpus relief is only available to persons that are in custody in violation of the United States Constitution, laws or treaties. 28 U.S.C. § 2254(a); *Engle v. Isaac*, 456 U.S. 107 (1982); *Smith v. Phillips*, 455 U.S. 209, 221 (1983). As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Wilson v. Mitchell*, 498 F.3d 491, 498 (6th Cir. 2007). Exhaustion is required before a state prisoner may bring a habeas corpus petition under either 28 U.S.C. § 2241 or 28 U.S.C. § 2254. *See Collins v. Million*, 121 Fed.Appx. 628, 630-31 (6th Cir. 2005). The petitioner bears the burden of proving exhaustion. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Also, the court of appeals may raise and consider the issue of exhaustion *sua sponte*. *Clinkscale v. Carter*, 375 F.3d 430, 438 (6th Cir. 2004) (citing *Harris v. Rees*, 794 F.2d 1168, 1170 (6th Cir. 1986)). Exhaustion does not require a state court adjudication on the merits of the claim at issue. *Clinkscale*, 375 F.3d at 438 (citing *Smith v. Digmon*, 434 U.S. 332, 333 (1978); *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990)).

The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts," which means "the highest court in the state in which the petitioner was convicted

has been given a full and fair opportunity to rule on the petitioner's claims." *Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006) (citing *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001)); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Wilson v. Mitchell*, 498 F.3d 491, 498-99 (6th Cir. 2007); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). A petitioner will not be allowed to present claims never before presented in the state courts, unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991) (citing *Engle v. Isaac*, 456 U.S. 107 (1982) and *Murray v. Carrier*, 477 U.S. 478 (1986)).

In addition to full presentation, a claim must also be fairly presented to the state courts as a federal constitutional issue rather than merely as a state law issue. *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). To exhaust a claim, a petitioner must present it to the state courts under the same theory that it is later presented in federal court. *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). For a claim to be "fairly presented," the petitioner must assert both a factual and legal basis for his claim in state court. *Fulcher v. Motley*, 444 F3d 791, 798 (6th Cir. 2006). A petitioner "fairly" presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (internal citation

omitted); *McMeans*, 228 F.3d at 681 (citing *Franklin*, 811 F.2d at 326). Although general allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated, a petitioner is not required to recite "book and verse on the federal constitution." *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984)).

Originally, the Supreme Court interpreted 28 U.S.C. § 2254 as providing that if a petitioner did not fulfill the total exhaustion requirement, a district court *must* dismiss the habeas petition, even if it contained both unexhausted and exhausted claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 852 (1999) (emphasis added) (citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982)); *cf.* 28 U.S.C. § 2254(b)(2) (stating that "a[n] application for a writ of habeas corpus *may* be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.") (emphasis added). However, the Supreme Court became concerned about petitioners losing their opportunity for federal review when the AEDPA, which was enacted in 1996, included a one-year statute of limitations. *See Rhines v. Weber*, 544 U.S. 269, 274-75 (2005). Citing *Rhines*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a mixed petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

*Harris v. Lafler*, 553 F.3d 1028, 1031-32 (6th Cir. 2009) (citing *Rockwell v. Yukins*, 217 F.3d 421, 425 (6th Cir. 2000)).

The AEDPA, as amended, provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C.A. § 2254(b)(2). Even assuming a state court remedy is available, the District Court may nevertheless consider a petitioner's unexhausted claim if the claim lacks merit and returning to state court "would amount to a mere futility." *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001); *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed)). Absent either cause and prejudice or a finding of actual innocence, a federal court is not required to reach the merits of claims that have been procedurally defaulted in state court by a state prisoner or in federal court by a federal prisoner in a defendant's direct criminal appeal. *See Reed v. Farley*, 512 U.S. 339, 354-55 (1994); *William v. Anderson*, 460 F.3d 789, 805-06 (6th Cir. 2006); *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 830 (6th Cir. 2005). Also, when the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not

13

required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). On the other hand, the Supreme Court has held that federal courts are not always required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be. Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."). The Sixth Circuit has endorsed this view in *Hudson v. Jones* and proceeded to the merits in a habeas corpus proceeding when the question of procedural default presented a complicated question of state law and was unnecessary to the disposition of the case. *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *accord Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008), *as amended* (July 7, 2008).

In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735 (citing *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)); *see also Harris v. Reed*, 489 U.S. 255, 262-63 (holding that the "plain statement" rule of *Michigan v. Long* applies to federal habeas review). Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1)      whether the petitioner failed to comply with an applicable state procedural rule;

(2)      whether the state courts actually enforced the state procedural sanction;

(3)      whether the state procedural bar is an "adequate and independent" state

14

(4)    ground in which the state can foreclose federal review; and

(4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418-20 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005), *vacated on other grounds in Bradshaw v. Richey*, 546 U.S. 74 (2005), *remanded to Richey v. Bradshaw*, 498 F.3d 344 (6th Cir. 2007); *Franklin*, 434 F.3d at 420. Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises) (superseded by statute as stated in *Parker v. Matthews*, 567 U.S. 37 (2012) on different grounds); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply). Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits

of the federal claim and is an adequate basis for the state court's decision. *Wilson v. Mitchell*, 498 F.3d 491, 499 (6th Cir. 2007); *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus, unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Geneva v. Lazaroff*, 77 Fed.Appx. 845, 850 (6th Cir. 2003); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986) (Demonstrating "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986); *Geneva*, 77 Fed.Appx. at 850. A petitioner can also show that a fundamental miscarriage of justice will occur if the Court does not address his procedurally defaulted ground for relief. *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman*, 501 U.S. at 750. The Supreme Court described the fundamental miscarriage of justice exception as follows:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Schlup*, 513 U.S. at 321. Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated,

16

either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## V.    STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the Act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998); *see* ECF Dkt. #1. As previously stated, under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

(d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the

17

language of 28 U.S.C. §2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct principle to the facts of the prisoner's case.

529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001); *Earhart v. Konteh*, 589 F.3d 337, 343 (6th Cir. 2009).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.   Decisions of lower federal courts may not be considered.

B.   Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.   The state court decision may be overturned only if:

1.   It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.   the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.   'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

        4.      the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

    D.      Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

    E.      Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell*, 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted); *see Casnave v. Lavigne*, 169 Fed.Appx. 435, 438-39 (6th Cir. 2006).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

    (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic, primary, or historical facts, and not to mixed questions of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 107-12 (1995). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *Id.*; *see McMullan v. Booker*, 761 F.3d

662, 671 (6th Cir. 2014) (citing *Thompson*, 516 U.S. at 111). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## VI.  LAW AND ANALYSIS
### A.  Grounds One, Three, and Four - Failure to Exhaust

The undersigned recommends that the Court find that Petitioner did not meet the total exhaustion requirement for Grounds One, Three, and Four because the Ohio Supreme Court did not have a "full and fair opportunity" to rule on these three grounds for relief. The undersigned also recommends that the Court find that Petitioner did not "fairly" present Ground One in the proper federal constitutional framework. *See e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004).

The problem of total exhaustion stems from the Appeals Court level because the first time the Petitioner raised Grounds One, Three, and Four were in a reply brief while his original appellate counsel's *Anders* motion was pending. ECF Dkt. #9-1 at 93-100. The appellate court acknowledged the additional possible errors that Petitioner raised in his reply brief, acknowledged that it must "review the entire record to determine whether the appeal is wholly frivolous," and found only one issue of arguable merit regarding sentencing. *Id.* at 103-05. After being appointed new appellate counsel and given an opportunity to submit further briefs, Petitioner, through counsel, did not raise any of these issues, but rather briefed the sole issue about sentencing as the judge requested, which Petitioner did not raise in his current habeas corpus petition. *See id.* at 101-91.

20

Under the Ohio Rules of Appellate Procedure, an appellant may not raise new arguments in a reply brief and if an issue was not presented in an appellant's initial merits brief, the issue may be deemed waived and the state appellate court does not need to consider the issue. Ohio App.R. 16(A)(7) & (C); *Elyria v. Lorain Cty. Budget Comm.*, 946 N.E.2d 742, 747 (Ohio 2011). By failing to raise these three claims not only in any of his merits briefs, rather than reply briefs, Petitioner failed to comply with the appellate procedures and waived these three claims. In addition, by not properly presenting Grounds One, Three, and Four to the appellate court, he consequently did not properly present this claim to the Ohio Supreme Court. In Ohio, exhaustion cannot occur where the appellant raised a claim for the first time in the Ohio Supreme Court without having first presented it to the lower appellate court. *See State v. Phillips*, 272 N.E.2d 347, 352 (Ohio 1971).

Furthermore, Petitioner filed an Ohio App.R. 26(B) application to reopen his direct appeal, which is an application that must be based on a claim of ineffective assistance of appellate counsel. *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008). The appellate court considered Petitioner's 26(B) application in light of the two-part test from *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and found no genuine issues as to whether Petitioner was denied the effective assistance of appellate counsel and that his alleged errors lack merit. ECF Dkt. # 9-1 at 292-95. However, Rule 26(B) applications do not preserve any other underlying claims for federal habeas review. *Davie*, 547 F.3d at 312; *see also Roberts v. Carter*, 337 F.3d 609, 615 (6th Cir. 2003) (noting that, "[i]n light of the requirements of Rule 26(B), the court's holding must be read as pertaining to the merits of" the ineffective assistance claim, not the underlying state procedural rule claim). Consequently, Petitioner's collateral appeal was restricted to the issue of ineffective assistance of counsel and the other underlying issues were not preserved and do not constitute fair presentation.

21

In addition to not *fully* presenting his claim, Petitioner did not *fairly* present Ground One. He did not present Ground One in either his first direct appeal reply brief, in his memorandum in support of jurisdiction to the Ohio Supreme Court on direct appeal and collateral appeal, or in his habeas corpus petition in terms of adequate constitutional violations. ECF Dkt. #9-1 at 93-99, 216, 306-310; ECF Dkt. #1 at 5. Petitioner's Ground One claim is also void of any constitutional provisions and any case law and instead only alleges that a witness committed perjury at trial. ECF Dkt. #1 at 5, 8-9. *See Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (internal citation omitted); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citing *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987)). However, Petitioner's Grounds Three and Four claims do fairly present the substance of his federal constitutional claims. His Ground Three claim alleges that his Fourteenth Amendment rights were violated when the prosecutor allegedly admitted an error in trial. *Id.* at 8; *see* ECF Dkt. #9-2 at 182-83 (portion of transcript Petitioner cites). Likewise, his Ground Four claim alleges that he was deprived of Due Process of the law when the trial court abused its discretion by admitting the allegedly perjured testimony into evidence even though the prosecutor acknowledged the alleged error. ECF Dkt. #1 at 9. Despite the fact that Grounds Three and Four, but not Ground One, were adequately framed in terms of constitutional violations, they were still not fully exhausted, as discussed above. For the aforementioned reasons, the undersigned recommends that the Court find that Petitioner failed to fully exhaust his claims regarding Grounds One, Three, and Four of his habeas corpus petition.

### B.     Ground Two - Fourth Amendment

In his second ground for relief, Petitioner asserts that police officers violated his Fourth Amendment rights at the time of his arrest because there was no probable cause due to the discrepant

22

timing of the dispatch call. ECF Dkt. #1 at 6. Since Respondent concedes that there are no procedural barriers to this claim, the AEDPA governs the review of Ground Two. *See* ECF Dkt. #9 at 27-30. For the following reasons, the undersigned recommends that Petitioner's second ground for relief also fails.

In *Stone v. Powell*, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state petitioner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 481 (1976). Thus, federal habeas corpus review of alleged Fourth Amendment claims is extremely limited. *Pierce v. Bunting*, No. 1:12CV2561, 2014 WL 5517256, at *7 (N.D.Ohio Oct. 31, 2014), citing *Loza v. Mitchell*, 705 F.Supp.2d 773, 859  60 (S.D.Ohio 2010) (quotations omitted).

The Sixth Circuit Court of Appeals stated that in determining whether a Fourth Amendment claim can proceed in a federal habeas corpus action, the Court must perform two distinct inquiries. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The Court must first "determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id*. at 526 (internal citations omitted). In *Riley*, the Sixth Circuit held that "the mechanism provided by the State of Ohio for the resolution of fourth amendment claims, is, in the abstract, clearly adequate." *Id.* at 526. The Sixth Circuit outlined the mechanisms, first citing to Rule 12 of the Ohio Rules of Criminal Procedure which provides an opportunity to raise Fourth Amendment claims through a motion to suppress. *Id*. (citing Ohio R. Crim. P. 12). The Court also cited to a defendant's ability to directly appeal a court's denial of a motion to suppress.

*Id.* (citing Ohio R. App. P. 3(A) and Ohio R.App.P. 5(A)). The Sixth Circuit found that these rules "provide an adequate procedural mechanism for the litigation of fourth amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision." *Id.*

Similar to *Riley*, Petitioner in the instant case, through counsel, filed a motion to suppress all evidence resulting from the warrantless seizure and seizure of Petitioner. ECF Dkt. #9-1 at 11-13. In this motion, Petitioner raised several Fourth Amendment issues, including Petitioner's second ground for relief in the instant case, which was that his arrest was not based on reasonable suspicion. *Id.* at 11. The trial court subsequently held a hearing on the motion to suppress. ECF Dkt. #9-2 at 1-54. Ultimately, the trial court granted his motion as to the statements he made because he was not given proper *Miranda* warnings, but the court denied the motion as to the remainder of the issues. ECF Dkt. #9-1 at 14. On appeal, Petitioner included in his Notice of Appeal that he would appeal the denial of his motion to suppress and asserted a total of seven assignments of error. *Id.* at 36. Petitioner's attorney also discussed it as a potential assignment of error in his *Anders* brief, which Petitioner copied into his own brief. *Id.* at 38-55. After further briefing, the appellate court did not find that the motion to suppress issue was one of arguable merit. *See id.* at 101-05.

Based upon the adequacy of the procedural mechanisms provided under Ohio law and Petitioner's ability to use those mechanisms without frustration, prevention or deprivation, the undersigned recommends that the Court find that Petitioner's second ground for relief is not cognizable before this Court.

24

## VII.   **RECOMMENDATION AND CONCLUSION**

The undersigned recommends that the Court find that Petitioner has failed to exhaust Grounds One, Three, and Four and that Ground Two is not cognizable before the Court. For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.

DATE: October 7, 2019                   _/s/ George J. Limbert_             

                                            GEORGE J. LIMBERT

                                            UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).